## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 10-25220 MER |
| TARATANJA DELAFUENTE | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| DAVID V. WADSWORTH, TRUSTEE, | ) | Adversary No. 10-1911 MER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUDY M. BAKER, ARTHUR | ) | |
| DELAFUENTE, MARY HELEN | ) | |
| DELAFUENTE, | ) | Signed/Docketed |
| | ) | April 30, 2012 |
| Defendants. | ) | |

## ORDER

        The issue before the Court is whether a defense alleging the existence of a resulting trust – an essentially state law question – should cause this Court to abstain from hearing to the Plaintiff/Trustee's fraudulent conveyance action until after the resulting trust matter has been determined in the state court.  The Court granted the Intervenors' motion to intervene, and allowed the parties to file briefs as to the question of the Court's jurisdiction over the question of a resulting trust.

## BACKGROUND FACTS

        Plaintiff David Wadsworth is the Chapter 7 Trustee (the "Trustee") in the case of Taratanja DeLaFuente (the "Debtor"), Case No. 10-25220 MER, filed June 18, 2010. The Trustee filed this adversary proceeding against Defendant Judy Baker ("Baker"), one of the Debtor's sisters.  The Complaint alleges the Debtor's parents conveyed their home in Brush, Colorado to the Debtor, Baker, and another sister, Kathy DeLaFuente, on January 12, 2007.  On May 12, 2009, Baker and Kathy DeLaFuente conveyed the property to the Debtor and Baker, and on February 9, 2010, the Debtor conveyed the property to Baker.  According to the Complaint, none of these transactions involved consideration.  The Complaint contains the following claims for relief against Baker:

1) for recovery of fraudulent transfer under 11 U.S.C. § 548(a)(1)(B); 2) for recovery of fraudulent transfer under § 548(a)(1)(A);[1] 3) for recovery of fraudulent transfer under § 544 and COLO. REV. STAT. § 38-8-106; and 4) for recovery of fraudulent transfer under § 544 and COLO. REV. STAT. § 38-8-105.

Baker's Answer admits the conveyances alleged took place and that she gave no consideration for the conveyance of February 9, 2010, but states the Debtor never gave any consideration for the original conveyance of the property to the Debtor and to her sisters. Rather, she asserts the conveyances were a form of estate planning for the sisters' parents. Baker also alleges the property is worth $75,000, not over $100,000 as alleged by the Trustee. She raises the following affirmative defenses: 1) failure to state a claim, 2) failure of the Plaintiff to suffer damages, 3) estate planning, 4) conveyances for the benefit of the sisters' parents, 5) the conveyances were intended only to benefit the sisters' parents, and 6) none of the initial transferees gave any consideration. In addition, Baker has filed a Motion to Abstain (Docket No. 35).

Following granting of their motion to intervene, the Debtor's parents, Arthur DeLaFuente and Mary Helen DeLaFuente ( the "Intervenors") also filed an Answer to the Trustee's Complaint. The Intervenors do not deny the transactions took place, but assert, by way of affirmative defense, they never intended to convey any legal or equitable right in the property, but the initial transfer to the sisters created a resulting trust for their benefit.

## POSITIONS OF THE PARTIES

### A.    Baker's Motion to Abstain

Baker contends this Court does not have jurisdiction to determine the fraudulent conveyance claims brought by the Trustee, based on *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) and *Stern v. Marshall*, ___U.S.___, 131 S.Ct. 2594 (2011). Specifically, Baker points out in both cases the Supreme Court described fraudulent conveyance actions as quintessentially suits at common law, addressing fundamentally private rights, and resembling contract claims brought by an estate to bring money into the estate more than creditor claims for a share in the estate.[2] Moreover, Baker argues the resulting trust defense raised by the Intervenors, being solely a question of state law, warrants abstention by this Court.

### B.    The Intervenors' Position

The Intervenors assert the Supreme Court's holding in *Stern* mandates the central issue in the case, that is, whether the initial transfer created a resulting trust

---

[1]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[2]  *Stern*, 131 S. Ct at 2614-2615  (citing *Granfinanciera*).

under Colorado law, must be determined in the state court.  They argue even though 28 U.S.C. § 157(b)(1) provides "core proceedings" include counterclaims by the estate against persons filing claims against the estate, *Stern* ruled a bankruptcy court cannot determine a compulsory counterclaim based on state law.  Here, the Intervenors state, their contention the initial 2007 transfer created a resulting trust, and therefore no property interest for the Debtor and her sisters, must be resolved before the Trustee can bring any claim for fraudulent conveyance.  Specifically, they maintain *Stern* requires the issue of the existence of a resulting trust as of 2007 be determined in the state court.  If such a trust were created, no property interest existed for the Debtor and her sisters to transfer, and the Trustee has no property interest to pursue on behalf of the estate.  If such a trust were found not to exist, the Trustee could bring his fraudulent conveyance claims, which would then constitute "core proceedings" properly before the bankruptcy court.

### C.    The Trustee's Position

The Trustee, on the other hand, contends *Stern* does not prevent this Court from hearing the fraudulent conveyance claims or the Intervenors' defenses, nor does it limit this Court's ability to enter a final judgment on the Trustee's claims.  The Trustee argues the first part of *Stern's* analysis is met because a fraudulent conveyance action under § 548 is a core proceeding under 28 U.S.C. § 157(b).  Second, and more importantly, the Trustee contends Congress's delegation to the Bankruptcy Courts power to determine fraudulent conveyance actions is not an unconstitutional delegation of power.  That is, according to the Trustee, *Stern* only found unconstitutional the allowing of a bankruptcy court to determine an estate's state law counterclaims.  The Trustee argues his fraudulent conveyance actions under § 548 and under the state law of Colorado could not exist absent the Debtor's insolvency and bankruptcy filing.  The Trustee disputes Baker's contention *Stern* and *Granfinanciera* prevent a bankruptcy court from making a final determination of a fraudulent conveyance claim.   Specifically, the Trustee asserts although *Granfinanciera* characterized a fraudulent conveyance claim as a "private right," *Stern* did not rely on it to conclude a bankruptcy court can never hear and finally determine private rights.  Rather, the *Stern* Court limited its holding to counterclaims based on state common law.

### DISCUSSION

### A.    Does *Stern v. Marshall* Prevent This Court from Determining the Trustee's Claims and Baker's and the Intervenors' Defenses?

The Court disagrees with Baker's apparent contention *Stern* removed all authority from the bankruptcy courts to hear fraudulent conveyance actions.  Rather, as noted by several courts interpreting *Stern*, the holding of that case was narrow.  As best stated by the Bankruptcy Court for the District of Delaware:

[A]s the Court itself said in *Stern*, the holding in that case was a narrow one. *Stern*, 131 S.Ct. at 2620 ("We do not think the removal of counterclaims such

as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one.").

The narrow question that the *Stern* Court was asked to determine involved a two-part inquiry: "(1) whether the Bankruptcy Court had the statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on [the debtor's] counterclaim; and (2) if so, whether conferring that authority on the Bankruptcy Court is constitutional." *Stern*, 131 S.Ct. at 2600 (emphasis added). After a lengthy analysis of 28 U.S.C. § 157 and Article III of the Constitution, the Court held that "although the Bankruptcy Court had the statutory authority to enter judgment on [the bankruptcy estate's state law counterclaim], it lacked the constitutional authority to do so." *Id.* at 2601 (emphasis added). In so holding, the Court in no way disturbed the bankruptcy court's jurisdiction to hear certain matters, which is a separate issue from the court's power to enter a final judgment.[3]

Thus, *Stern* did not make any rulings as to a bankruptcy court's subject matter jurisdiction, but dealt instead with a bankruptcy court's power to enter final, binding judgments as to a certain narrow group of state law actions.[4]  *Stern* addressed a bankruptcy court's authority to hear and make a final determination of a debtor's common-law counterclaim to a proof of claim filed against the bankruptcy estate.[5] Having considered the circumstances of this case, the Court concludes it does not fall within the narrow boundaries prescribed by *Stern*, and therefore *Stern* does not prevent this Court from hearing the Complaint and the defenses asserted thereto.

Specifically, in the case at bar, the issue of a resulting trust is brought up as an affirmative defense by Baker, and an affirmative defense by the Intervenors. Specifically, Baker's Answer states somewhat vaguely all the transfers were "done in the form [of] a trust for the benefit and welfare of the parents of the transferees. . . ."[6] Similarly, the Intervenors' Answer states, under the heading "Affirmative Defenses," "Plaintiff's claims are barred due to the fact that the transfers that are the subject of the Complaint resulted in a resulting trust for the benefit of these Defendants."[7]  Therefore, unlike the *Stern* case, this case does not involve compulsory counterclaims seeking to

---

[3]  *Liquidating Trustee v. Granite Financial Solutions, Inc. (In re MPC Computers, LLC)*, ___B.R.___, 2012 WL 386268, *2-3 (Bankr. D. Del. February 7, 2012),

[4]  *Id.*, at *2.

[5]  *See, e.g., Reed v. Linehan, et al. (In re Soporex, Inc.)*, 463 B.R. 344, 362 (Bankr. N.D. Tex. 2011).

[6]  Baker's Answer, ¶42.

[7]  Intervenors' Answer, p. 4.

establish claims against the Debtor's estate. [8]  Rather, Baker and the Intervenors are simply asserting reasons why they should not be subject to the claims raised in the Trustee's Complaint.[9]  No claims have yet been filed against the estate, nor do Baker or the Intervenors assert, at least at this juncture, they are entitled to recovery from the estate.  As it stands now, this matter consists of the Trustee attempting to recover property of the estate, and Baker and the Intervenors asserting no such property exists for recovery.  Although questions of rights in property, real or personal, often involve issues of state law, the Court finds this matter is not circumscribed by the narrow dimensions of *Stern* simply because of the affirmative defense of resulting trust. Therefore, the question becomes whether the Court should, nonetheless, abstain from hearing the matter under more traditional abstention doctrine.

## B.   Should the Court Abstain from Hearing the Adversary Proceeding?

It is well-settled that under 28 U.S.C. §§ 1334(b)(1) and 157(a), bankruptcy courts possess "only the jurisdiction and powers expressly or by necessary implication granted by Congress."[10]  Pursuant to 28 U.S.C. § 157(a) and (b), a bankruptcy court, following referral by a federal district court, may hear:  1) a bankruptcy case created by the filing of a bankruptcy petition; 2) a civil proceeding "arising under" title 11; 3) a civil proceeding "arising in" a case under title 11; and 4) a civil proceeding "related to" a case under title 11.  "[C]ore proceedings are defined as those which arise under title 11 or arise in a case under title 11, they 'are proceedings which have no existence outside of bankruptcy.'"[11]  "Actions . . . which could proceed in another court are not core proceedings."[12]  A "related to" proceeding, which a bankruptcy court may hear and may issue proposed findings, pursuant to 28 U.S.C. § 157(c)(1), is a proceeding in which the outcome could conceivably have any effect on the estate being administered in bankruptcy.[13]

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain from adjudicating a matter (mandatory abstention) when the following six elements are present: 1) the

---

[8] *See First American Title v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 425 B.R. 402, 418-419 (Bankr. S.D. Tex. 2010).

[9] It should also be noted both Baker and the Intervenors assert defenses other than resulting trust.

[10] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990) (citations omitted).

[11] *Lucre Management Group v. Schempp Real Estate, LLC (In re Schempp Real Estate, LLC)*, 303 B.R. 866, 873 (Bankr. D. Colo. 2003) (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d at 1518).

[12] *Gardner*, 913 F.2d at 1518.

[13] *Id.*

motion to abstain was timely; 2) the action is based on state law; 3) an action has been commenced in state court; 4) the action can be timely adjudicated in state court; 5) there is no independent basis for federal jurisdiction other than bankruptcy; and 6) the matter is non-core.[14]  A bankruptcy court may abstain (permissive abstention) from both core matters and non-core matters when it is in the "interest of justice," judicial economy, or in respect for state law.[15]

Several courts have cited factors to be considered in determining discretionary abstention, including Chief Judge Tallman of this Court.[16]  The *Schempp* factors can be divided into categories, posing two overarching questions:

1.      Is the nature of the proceeding better suited for state court or bankruptcy court?

2.      How will the bankruptcy court's acceptance of jurisdiction or abstention from jurisdiction affect the administration of the case and the functioning of the courts involved?

In this case, a motion to abstain was filed, and the matter involves, at least as to one of the defenses raised, an issue of state law.  However, there is no state law case pending, and no information about what the timing of a state court action would involve. Further, the basis of this matter is an attempt to recover property for the estate, brought

---

[14]  28 U.S.C. § 1334(c)(2). *See Telluride Asset Resolution, LLC v. Telluride Global Dev, LLC ( In re Telluride Income Growth, LP)*, 364 B.R. 390, 398 (10th Cir. BAP 2007);

[15]  28 U.S.C. § 1334(c)(1).  Further, where most of the factors necessary for mandatory abstention are present, a strong case for discretionary abstention exists.  *Braucher v. Continental Illinois National Bank & Trust Co. of Chicago, et al. (In re Illinois-California Express, Inc.)*, 50 B.R. 232, 241 (Bankr. D. Colo. 1985).

[16]  Per Judge Tallman, a court should consider:

- The abstention's effect or lack thereof on the effective administration of the estate;
- The extent to which state law issues predominate over bankruptcy issues;
- The difficult or unsettled nature of any applicable law;
- The presence of a related proceeding commenced in another court;
- Any jurisdictional basis other than 28 U.S.C. § 1334;
- The proceeding's degree of relatedness or remoteness to the main bankruptcy case;
- The substance rather than the form of an asserted "core" proceeding;
- The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court and enforcement to be left to the bankruptcy court;
- The burden on the bankruptcy court's docket;
- The likelihood that bringing the proceeding in bankruptcy court involves "forum shopping" by one of the parties;
- The existence of a right to a jury trial; and
- The presence in the proceeding of non-debtor parties.

*Schempp Real Estate, LLC*, 303 B.R. at 876 (citations omitted).

by the Chapter 7 Trustee.  While there would be no basis for federal jurisdiction over such an attempt, nor a defense to such an attempt absent the Debtor's bankruptcy case, it is, based on the existence of the bankruptcy estate, a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (E).[17]  Therefore, few of the factors requiring abstention are present here.  Moreover, based on the limited information before it, the Court concludes this proceeding is better suited for the bankruptcy court, and its determination by this Court will best promote the efficient administration of the bankruptcy estate and the efficient functioning both of this Court and the state courts, in a way the bifurcation of the proceeding by issue could not.

For the above reasons,

IT IS HEREBY ORDERED Baker's Motion to Abstain is DENIED.

A trial scheduling conference will be set by separate order.

Dated April 30, 2012                              BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[17] 28 U.S.C. § 157(b) (2)(H) and (E) include as "core proceedings" "proceedings to determine, avoid, or recover fraudulent conveyances," and "orders to turn over property of the estate."  If the Trustee is successful in avoiding the alleged fraudulent conveyances, he may then seek turnover of the real property or its value as property of the estate.